■ NANCY LAGO, Appellant, v HAROLD LEWIS ADRION, Respondent. [940 NYS2d 287]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Dutchess County (Dolan, J.), dated July 13, 2010, as, upon findings of fact and conclusions of law dated May 5, 2010, and upon supplemental findings of fact dated July 13, 2010, made after a nonjury trial, imputed annual income of $80,000 to her, limited her child support award to $2,041 per month, provided that "should the Defendant lose his law license by suspension, revocation, or otherwise, and be unable to sustain his current level of income, such event shall constitute a sufficient change of circumstances warranting application for downward modification" of child support, and directed her to pay $234,238, constituting one half of the unpaid tax liabilities of the parties incurred during the last two years of the marriage.

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the fourth decretal paragraph thereof, providing that "should the Defendant lose his law license by suspension, revocation, or otherwise, and be unable to sustain his current level of income, such event shall constitute a sufficient change of circumstances warranting application for downward modification" of child support, and (2) by deleting the provision thereof directing the plaintiff to pay $234,238, constituting one half of the unpaid tax liabilities of the parties incurred during the last two years of the marriage, and substituting therefor a provision directing the defendant to pay the total tax liability of $468,476; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements.

The parties were married on September 10, 1995, and have

one child, born October 28, 1996. The plaintiff wife commenced the instant action by filing a summons and complaint on September 19, 2006, after 11 years of marriage. The parties agreed on joint custody of the child and the primary physical residence of the child with the plaintiff, and consented to a divorce on the ground of constructive abandonment. In March 2010 the parties proceeded to a nonjury trial on certain financial issues.

At the conclusion of the trial, the Supreme Court found that the defendant was a tax attorney with a current income of $475,000 per year, that the plaintiff was not working, and that the plaintiff had a masters' degree in architecture from Harvard University and performed some doctoral work at the Massachusetts Institute of Technology. Based upon her educational qualifications and experience, and expert testimony, the Supreme Court imputed income of $80,000 per year to the plaintiff. The Supreme Court determined that the defendant was obligated to pay $2,041 per month in basic child support based on the plaintiff's imputed income of $80,000 per year, and a finding that the child support percentage should only be applied to the first $150,000 of the defendant's annual income. The supplemental findings of fact stated that "[t]o the extent that this court may have deviated from the guideline standards," it did so for the reasons that the child was "thriving" on the pendente lite child support of $2,041 per month, and the parties' standard of living during the marriage was that of a "middle-class" family. The judgment appealed from further provided that "should the Defendant lose his law license by suspension, revocation, or otherwise, and be unable to sustain his current level of income, such event shall constitute a sufficient change of circumstances warranting application for downward modification" of child support.

With respect to the equitable distribution of property, the Supreme Court concluded that the parties incurred federal tax liability of $430,476 for 2005 and 2006 up until September 19, 2006, and New York State tax liability of $38,000 for that same period, which constituted a marital debt which should be divided equally between the parties. This tax liability included interest and penalties. The Supreme Court held that the plaintiff's one-half share of that tax liability was $234,238.

The Supreme Court properly imputed $80,000 in annual income to the plaintiff based upon her education and experience, and the testimony of the defendant's expert. "In determining a child support obligation, a court need not rely on a party's own account of his or her finances" (*Bell v Bell*, 277 AD2d 411,

412 [2000]), but may, in the exercise of its considerable discretion (*see Matter of Julianska v Majewski*, 78 AD3d 1182, 1183 [2010]), impute income to a party based upon his or her employment history, future earning capacity, and educational background (*Matter of Bouie v Joseph*, 91 AD3d 641 [2012]; *see Brown v Brown*, 239 AD2d 535 [1997]), and what he or she is capable of earning, based upon prevailing market conditions and prevailing salaries paid to individuals with the party's credentials in his or her chosen field (*see Matter of Gebaide v McGoldrick*, 74 AD3d 966, 967 [2010]; *Matter of Perry v Pica*, 22 AD3d 903, 904-905 [2005]). Further, imputation of income may be based upon the testimony of an expert regarding a party's ability to earn an income (*see Matter of Strella v Ferro*, 42 AD3d 544, 546 [2007]). Here, the Supreme Court's imputation of income was supported by unrefuted expert testimony and testimony regarding the plaintiff's education and experience.

Effective January 31, 2010, the Child Support Standards Act provides that the applicable child support percentage should be applied to the first $130,000 of combined parental income (*see* Domestic Relations Law § 240 [1-b] [c] [2]; Social Services Law § 111-i [2] [b]; L 2009, ch 343; *Vanyo v Vanyo*, 79 AD3d 1751, 1752 [2010]). Where the parents' income exceeds the income cap, as in this case, the amount of child support in excess of the income cap is determined based upon a consideration of factors set forth in Domestic Relations Law § 240 (1-b) (f) "and/or the child support percentage" (Domestic Relations Law § 240 [1-b] [c] [3]; *see Matter of Freeman v Freeman*, 71 AD3d 1143, 1144 [2010]). The factors set forth in Domestic Relations Law § 240 (1-b) (f) include, in pertinent part, the financial resources of both parents, the needs of the child, the standard of living the child would have enjoyed had the marriage not been dissolved, nonmonetary contribution that the parents will make to the care and well-being of the child, and any other factor which the court determines to be relevant to the case. Here, the evidence at the trial supported the Supreme Court's conclusion that, during the marriage, the child enjoyed a "middle-class" lifestyle, and her needs were met by the pendente lite child support award of $2,041 per month. The application of the child support percentage to the first $150,000 of the defendant's annual income, and the amount of child support awarded, was supported by the record (*see Lee v Lee*, 18 AD3d 508 [2005]).

As the defendant correctly concedes, the provision of the judgment of divorce which states that, "should the Defendant lose his law license by suspension, revocation, or otherwise, and be unable to sustain his current level of income, such event shall

constitute a sufficient change of circumstances warranting application for downward modification" of child support, was improper (*see Matter of Knights v Knights*, 71 NY2d 865, 867 [1988]). Accordingly, this provision of the judgment must be deleted.

The income tax liability of the parties was subject to equitable distribution (*see Conway v Conway*, 29 AD3d 725, 725-726 [2006]; *Capasso v Capasso*, 129 AD2d 267, 293 [1987]), but equitable distribution does not necessarily mean equal distribution (*see Auriemmo v Auriemmo*, 87 AD3d 1090, 1091 [2011]; *Michaelessi v Michaelessi*, 59 AD3d 688, 689 [2009]). A spouse is generally obligated to pay his or her 50% share of income tax liability during the marriage if the spouse benefits from use of the funds (*see Moyal v Moyal*, 85 AD3d 614, 615 [2011]), or the delay in paying the tax liability (*see Conway v Conway*, 29 AD3d at 725-726). However, if one spouse makes the financial decisions regarding the income tax return, and earned virtually 100% of the parties' income during the period, the court, in its discretion, may direct that spouse to pay the entire tax liability (*see Costello v Costello*, 304 AD2d 517, 519 [2003]).

Here, the defendant acknowledged that he handled all tax matters for the parties during the marriage, and attributes his inability to pay his taxes from his current income to the fact that his expenses were too high, in part because he had to maintain a rented home for his family while the parties' house in Pawling was being renovated. However, the evidence adduced at trial indicated that it was his decision to move the parties' full-time residence to the house in Pawling, despite the fact that the house was in "bad shape." Further, under the circumstances of this case, it cannot be said that the plaintiff derived a benefit from the defendant's failure to pay the taxes (*cf. Conway v Conway*, 29 AD3d at 726). Accordingly, the Supreme Court, in its discretion, should have directed the defendant to pay the entire tax liability (*see Costello v Costello*, 304 AD2d at 519).

The parties' remaining contentions either are without merit or need not be addressed in light of our determination. Skelos, J.P., Dickerson, Belen and Miller, JJ., concur.