OPINION OF THE COURT
Catherine M. DiDomenico, J.
Plaintiff, N.M. (wife or mother) and defendant R.G. (husband or father) were married on April 27, 2005. There is one child of this union, G.G. (age six). The N.M./R.G. family was transferred into the Integrated Domestic Violence Part (IDV) by transfer order dated March 10, 2011. At that time, husband was the defendant in a criminal case under docket number 40027M2011 in which he was charged with two counts of criminal contempt in the second degree (Penal Law § 215.50), one count of aggravated harassment in the second degree (Penal Law § 240.30), and one count of harassment in the second degree (Penal Law § 240.26) for acts allegedly committed against plaintiff wife. Subsequent to the transfer into IDV[ husband was arrested a second time and charged with criminal contempt in the second degree (Penal Law § 215.50) under docket number 4077M2011 for allegedly violating the temporary order of protection issued by this court. At the time the case was transferred into this part, wife was the petitioner in a related Family Court matter under docket number 0-00197/11 wherein she sought an order of protection against husband. Husband was also the petitioner in docket number V-00880/11 wherein he sought visitation with the subject child, G.G.
*292 The criminal cases against husband were consolidated. On January 19, 2012, husband pleaded guilty to one count of Penal Law § 240.26 (1), harassment in the second degree. Husband was sentenced to a one-year conditional discharge with a $150 fine, and wife was granted a two-year final order of protection which required husband to stay away from wife, subject to Supreme Court or Family Court orders. Wife’s order of protection expires on January 18, 2014. Wife’s request for an order of protection on the family offense docket was withdrawn on September 27, 2011.
By summons and complaint dated January 14, 2011, wife commenced this action for divorce against defendant. It appears that husband never filed an answer to wife’s pleading, however the failure to interpose an answer in a matrimonial proceeding is not a bar to participation therein, nor has wife raised an objection on this ground. (See Rosen v Rosen, 308 AD2d 482 [2d Dept 2003].) A preliminary conference was held on April 11, 2011. The parties resolved the issue of grounds in the preliminary conference order by agreeing that the wife would take the divorce, after the resolution of all financial issues, on the ground that the marriage had broken down irretrievably for a period of six months. (See Domestic Relations Law § 170 [7].) An inquest was held on this subject and a judgment of divorce was granted to wife during the course of this trial. The preliminary conference order also included a final waiver of maintenance by both parties. By stipulation and order dated June 21, 2011 the parties settled all issues of equitable distribution.
On August 9, 2011, the parties entered into a consent order wherein wife was awarded final legal and physical custody of the subject child G. On December 6, 2011, the parties entered into a temporary order of visitation, on consent, which granted husband visitation with the subject child every Wednesday with pickup at the subject child’s school overnight to Thursday morning with drop off at school. Husband was also granted alternate weekend visitation from Friday after school to Monday morning with drop off at school. The court notes that at the time of this order husband still lived close to the subject child. During the course of the proceedings husband relocated with his paramour to Long Island.
On January 24, 2012, wife filed an order to show cause (sequence No. 002) seeking the immediate suspension of husband’s visitation. Wife alleged that, after reviewing her 2011 year-end United Federation of Teachers (UFT) prescription drug *293 health insurance statement, she discovered, for the first time, that during the period of January 2011 to December 2011 husband had been prescribed staggering amounts of prescription medication, including oxycodone, Opana, OxyContin, and Xanax. These pills were being prescribed by two physicians, Dr. Christian Nahas and Dr. Mario Manna, and were filled by husband at a number of different pharmacies at a total cost to the UFT of $59,403.30. This used up a significant portion of the lifetime benefit for wife and the subject child. Wife alleged that husband was misusing or abusing the prescription drugs or unlawfully selling some or all of them for profit. No interim relief was granted and the matter was calendared for the following day for husband’s appearance.
After a review of the UFT statement, and after hearing from the parties, this court temporarily suspended husband’s visitation by short form order dated January 25, 2012. The court also directed the Administration for Children’s Services to conduct an investigation regarding the allegations raised in wife’s motion. On January 30, 2011, husband was granted visitation with the subject child, once a week, to be supervised by Ms. Eileen Montrose, LSCW. On June 20, 2012 the court continued husband’s supervised visitation but changed the supervisor to husband’s sister Ms. I.G.-D. on consent of all parties. The June 20th order contained a prohibition against husband driving with the child as a passenger. On April 24, 2012, wife’s motion to suspend visitation was scheduled for a hearing as was husband’s motion (sequence No. 003) to hold wife in contempt for not complying with the parties stipulated visitation schedule.
The hearing commenced on April 26, 2012. Wife was represented by Carolyn Halk Esq., husband was represented by Mark Bernstein Esq., and the subject child was represented by Rita Kaufman Esq., from the Children’s Law Center. On consent, the hearing was expanded into a trial to cover all of the issues present in the divorce action. This trial continued on May 16, 2012, June 6, 2012, June 20, 2012, July 10, 2012, July 30, 2012, August 30, 2012, October 15, 2012, November 19, 2012 and December 5, 2012.
At trial, wife testified on her own behalf and introduced several documents into evidence (plaintiff’s exhibits 1-15). Wife also called Dr. Christian Nahas D.O., one of husband’s doctors, and Dr. Jane Stillman, an expert in pain management, as her witnesses. Husband testified on his own behalf and called his *294 supervisor Hansen Wong, his coworker Ranford Gayle and Dr. Peter Zenetos, another doctor, as witnesses.
The trial concluded on December 5, 2012. However, on February 15, 2013 husband made a posttrial application to reopen the record to testify that he stopped taking prescription drugs. Husband’s application was supported by the Attorney for the Child and opposed by wife. On April 8, 2013, husband’s application was granted by this court in a written decision. In accordance with the court’s decision, the trial was reopened and additional testimony was taken from husband on April 8, 2013. Husband’s testimony was limited to events that occurred after the conclusion of trial. Husband testified on direct and cross that, since the conclusion of trial on December 5, 2012, he attempted to wean himself off the use of prescription drugs, but was unable to do so due to intense pain. Husband further testified that in an attempt to lessen his dependency on prescription drugs, he ceased using oxycodone, OxyContin and Xanax and instead switched to a single pain medication, Nucynta. Husband currently takes Nucynta, 75 milligrams, between two and four pills a day under the care of a new physician, Dr. Leonid Reyfman. The court takes judicial notice that Nucynta, an opiate generically known as tapentadol, is a schedule II controlled substance. (See 21 USC § 812.)
An in camera examination of the subject child was held on June 4, 2013. Both parties were permitted to submit written questions to the court and to the child’s attorney for consideration. The child’s testimony has been sealed by order of this court and preserved for appellate review.
On or about June 24, 2013, husband’s attorney, Mark Bernstein Esq., filed an order to show cause (sequence No. 005) to withdraw as counsel and for a money judgment regarding his outstanding counsel fees. This application was granted on default and without written opposition on July 1, 2013. Mr. Bernstein was relieved as counsel by short form order and instructed to settle an order on notice to husband regarding his outstanding counsel fees. Due to Mr. Bernstein’s withdrawal, a 30-day stay was implemented and the submission date of the parties’ written summations was adjourned to September 16, 2013. Written summations were actually received from plaintiff wife on September 13, 2013; The Children’s Law Center on September 16, 2013; and defendant husband on September 17, 2013. Husband prepared his own written summation.
On June 5, 2013, wife filed a motion (sequence No. 004) for pendente lite child support. On September 17, 2013, the return *295 date for wife’s motion, husband indicated that he had not visited with the subject child in over five months and made an oral application for the resumption of unsupervised visitation. Husband claimed that he could not visit with his son because the court-appointed supervisor, husband’s sister I.G.-D., was no longer willing to be a resource. Wife, aware that this court was in the process of determining the propriety of husband’s parental access, nevertheless agreed that husband should have unsupervised visitation with G. for four hours in a public place on Staten Island every Sunday. This stipulation was supported by the Attorney for the Child. Upon application of all parties, this court so ordered the visitation stipulation with the restriction that husband not avail himself of the visitation if visibly impaired by prescription drugs, and moreover, that he not drive with the subject child as a passenger. The submission of the trial for decision was adjourned to determine the outcome of the new visitation order and to allow husband to submit opposition to wife’s motion for child support.
On October 15, 2013, the parties returned for a conference regarding the status of unsupervised visitation between husband and the subject child. All parties reported that the visitation went well and without incident. Based upon this positive report, husband made yet another oral application for extended time with the child and for permission to resume taking the child to husband’s home in Long Island for visits. Husband’s application was granted by short form order dated October 15, 2013 wherein he was granted six hours of visitation with G. every Sunday and permitted to return to his home with the child. This visitation schedule is currently in effect. No incidents have been reported to this court. The restriction on husband’s driving with the child remains in effect. On October 15, 2013, a further briefing schedule was issued and wife’s pending child support motion was merged into the trial on consent. Final submissions in relation to the motion were scheduled for October 29, 2013. The motion and the trial were fully submitted for decision on October 31, 2013.
Husband’s Parental Access
In determining a parent’s visitation rights, the most important factor to be considered is the best interests of the child. (See Jacobs v Young, 107 AD3d 896 [2d Dept 2013]; see also Eschbach v Eschbach, 56 NY2d 167 [1982].) Visitation is a joint right of the noncustodial parent and of the child. (See Matter of Aguirre v Romano, 73 AD3d 912 [2d Dept 2010].)
*296 Where a final order of visitation has been agreed to by the parties it may only be modified upon a showing that there has been a change in circumstances since the entry of the prior order. (See Matter of Hansen v Balkaran, 111 AD3d 827 [2d Dept 2013]; see also Matter of Rambali v Rambali, 102 AD3d 797 [2d Dept 2013].) Husband argues that this standard also applies to a modification of the temporary order, at issue here. However, when a temporary order has been issued, the court is not required to conduct a change in circumstances analysis. Rather, the issue of final visitation is to be treated as an initial determination. (See Matter of Williams v Dowgiallo, 90 AD3d 942 [2d Dept 2011]; see also Matter of Quinones v Gonzalez, 79 AD3d 893 [2d Dept 2010].)
When making an initial visitation determination, the court’s paramount concern must be the best interests of the child, which is determined by considering the totality of the circumstances. (See Matter of Felty v Felty, 108 AD3d 705 [2d Dept 2013].) There is a rebuttable presumption that meaningful visitation should be awarded to the noncustodial parent unless that visitation would be harmful to the child. (See Matter of Granger v Misercola, 21 NY3d 86 [2013].) A prior award of temporary visitation is a factor to be considered when making a final determination. (See Matter of Holohan v Levens, 106 AD3d 1003 [2d Dept 2013].) The child’s position regarding visitation is another factor to be considered. (See Matter of Stramezzi v Scozzari, 106 AD3d 748 [2d Dept 2013].)
Husband consented to a final order of custody to wife on August 9, 2011. On December 6, 2011, the parties entered into a temporary order of visitation wherein husband was awarded parenting time with G. on alternate weekends and from Wednesday evening overnight to Thursday morning. On or about January 25, 2012, wife moved by order to show cause for an immediate suspension and subsequent modification of husband’s access on the grounds that he was either abusing, or misusing, substantial amounts of prescription drugs. Specifically, wife alleged that husband was either consuming up to 1,440 pills of pain medication a month, or consuming some and selling the rest. Husband admitted that he was prescribed the amount of medication indicated by the UFT records and attributed the pain medication to injuries sustained during his service as a Marine during Operation Desert Storm, which injuries were aggravated and exacerbated by a subsequent motor vehicle accident. Husband argued that he needed the amount of medica *297 tion he was receiving because he built up a tolerance to the medication over time which necessitated the taking of more medication in order for him to function on a daily basis.
On April 26, 2012, wife called at trial one of husband’s doctors, Dr. Christian Nahas as a witness to establish the amount of medication husband was taking. Dr. Nahas, a family care practitioner was called as a treating physician only. Dr. Nahas is not a board certified pain management specialist. Dr. Nahas testified that husband was taking approximately 30 OxyContin a day (approximately 900 pills a month) as of June 2010, and that these pills were prescribed by himself and his physician’s assistant John Maiorino. In or around July of 2011, Dr. Nahas also prescribed husband alprazolam (Xanax) and Opana ER. Dr. Nahas further testified that by 2012, husband had reduced his consumption to approximately 360 oxycodone and 360 OxyContin a month. When called upon to make a determination as to whether husband was addicted to pain medication, Dr. Nahas testified that husband was dependant on the medications to function properly.
On June 7, 2012, Dr. Nahas continued his testimony and admitted that he was under investigation for his practices and procedures in distributing narcotic medication. As part of his negotiations with the Office of Professional Medical Conduct (OPMC), Dr. Nahas was permitted to continue practicing, but his license to prescribe narcotics was suspended. Dr. Nahas testified that, as 80% of his practice was related to the dispensing of pain medication, he decided to close his office during the pendency of this trial and the OPMC proceedings against him.
In support of her position that husband was abusing prescription drugs, wife called a pain management specialist, Anne Marie Stillwell M.D., to testify as an expert on pain medication. Despite husband’s claim that he ingested substantially all of the medication he received, the court credits Dr. Stillwell’s testimony that it is highly unlikely that Mr. G. could be ingesting the amount of pills that he was receiving in 2011. While wife could not definitively prove that husband was selling the excess pills, Dr. Stillwell’s testimony, viewed together with wife’s evidence of husband’s cash deposits, supported wife’s belief that husband may have been selling the pills, which allegation was immediately referred by this court to the district attorney’s office. The court also credits husband’s own witness, Dr. Peter Zenetos, who testified that, while husband indicated a desire to lessen his amount of medication, he was at high risk for addic *298 tion. It was his medical recommendation that husband attend addiction psychiatric counseling in order to understand the consequences of remaining on these controlled substances and to seek out a non-narcotic method of treatment.
At the time of wife’s initial application to suspend visits, it appears that husband was either abusing prescription drugs by ingesting excessive amounts, or misusing prescription drugs by distributing them illegally. However, since that date, due to the pendency of this proceeding, the intervention of this court, and Dr. Nahas’ decision to close his practice and sever his relationship with husband, husband has, by all accounts, substantially reduced his prescription drug intake to a single prescribed pain medication, Nucynta, which is currently prescribed by a new pain management physician. While wife’s expert, Dr. Stillwell, was “shocked” by the amount of medication husband was prescribed in 2011, she did admit, to a reasonable degree of medical certainty, that, due to his injuries, he would likely require at least 30 milligrams of oxycodone twice a day, or similar medication, to function properly. The court also credits Dr. Stillwell’s testimony that, when taken correctly, pain medication is not a bar to normal life, including driving and the care of children.
While the abuse, or misuse, of husband’s prescription drugs in 2011 was a change in circumstances sufficient to suspend visitation on a temporary basis in April of 2011, wife has failed to show a nonspeculative nexus between husband’s current, significantly reduced, prescription drug use and a potential harm to the child. (See Matter of Laware v Baldwin, 42 AD3d 696 [3d Dept 2007].) Wife has not shown that husband’s current prescription drug use “would be inimical to the [children’s] welfare.” (See Matter of Ice S., 30 AD3d 428, 429 [2d Dept 2006].) There is no testimony to indicate that, at this time, husband is an unfit father, or that the subject child is in danger while in his care. (See Matter of Granger v Misercola, 21 NY3d 86 [2013]; Matter of Nell v Nell, 87 AD3d 541 [2d Dept 2011].) This finding is supported by wife’s decision to allow unsupervised visits, while this trial decision was pending, upon the application of husband and the child’s attorney.
Although husband’s driving privileges with his child were suspended on an interim basis as a precaution, the court notes that his employment with the State of New York involves the frequent driving of a tractor trailer. According to husband’s supervisor, Mr. Hansen Wong, he had no reason to suspect that *299 husband was unfit to drive. Husband’s coworker, Raymond Gayle, also testified that he has driven with husband on numerous occasions and never had any concerns about his driving.
In addition to the testimony provided by Mr. Wong, the court credits the reports of Eileen Montrose, LSCW, who was appointed to supervise husband’s visitation on January 30, 2012. Ms. Montrose’s reports, which were admitted into evidence, indicate that husband was at all times attentive, responsive, and never appeared unable to focus or remain alert during his visits. Moreover, Ms. Montrose’s reports further indicated that she believed the subject child was suffering from the lack of normal visits with his father. (See Montrose reports dated Apr. 24, 2012, June 5, 2012 and June 19, 2012 [Attorney for the Child’s exhibit A].)
Another factor to be considered is the wishes of the child as proffered by the Attorney for the Child. (See Eschbach v Eschbach, 56 NY2d 167 [1982]; see also Catalan v Catalan, 6 AD3d 482 [2d Dept 2004].) Here, the Attorney for the Child’s position has consistently been for the resumption of meaningful, unsupervised access between G. and his father. As stated in the Attorney for the Child’s summation, G.’s position is that he “desperately wishes to spend extended time with his father, and that he is upset and confused by the absence of his father from his life.”
Wife’s request in her summation to limit husband to professionally supervised visitation was effectively withdrawn when she consented on September 13, 2013 to an order of unsupervised visitation after trial while this decision was pending. Moreover, the record evidences that husband has greatly decreased his access to, and consumption of, prescription drugs for a myriad of reasons, including his stated desire to have a meaningful relationship with this child. However, notwithstanding these positive changes, it is not disputed that husband continues to be prescribed at least one controlled substance which he ingests on a regular daily basis. For this reason, the court deems it in the child’s best interest to impose a visitation schedule with the reasonable restrictions set forth below. (See Lindenman v Lindenman, 288 AD2d 352 [2d Dept 2001]; see also Matter of Sitzer v Fay, 27 AD3d 566 [2d Dept 2006].)
As per his application, husband is hereby awarded unsupervised visitation with the subject child on alternate weekends commencing Saturday, January 11, 2014 with pick up at the child’s residence at 9:30 a.m. and drop off at the child’s *300 residence on Sunday night at 8:00 p.m. Husband is also awarded visitation every Wednesday night, pick up at school and drop off at the child’s residence at 7:30 p.m. In addition, the parties shall alternate all national and religious holidays with a schedule to be determined by the parties. When determining holiday visitation, mother shall always have Mother’s Day, and father shall always have Father’s Day. The child’s birthday shall be alternated between the parties with mother having visitation on odd years and husband having visitation on even years. Mother shall have winter break visitation in even years and husband shall have winter break visitation in odd years. Mother shall have spring break visitation in odd years and husband shall have spring break visitation in even years. Finally, each party shall be entitled to two weeks of uninterrupted vacation time each summer. Husband shall have his visitation in July and wife shall have her visitation in August with exact dates to be agreed upon between the parties. Pickup and drop offs on holidays and vacation is to be scheduled between the parties via email or text message. This visitation shall be in addition to any further visitation agreed to by the parties.
Husband is hereby ordered to exercise his visitation rights only when not visibly impaired by the use of prescription drugs. Moreover, husband is hereby prohibited from operating a motor vehicle with the subject child as a passenger if he has taken Nucynta, or any other prescription pain or anxiety medication, within six hours of driving the child. (See Matter of Gallo v Gallo, 81 AD3d 826 [2d Dept 2011]; see also Bohnsack v Bohnsack, 185 AD2d 533 [3d Dept 1992].) This restriction is a fair balance between wife’s demand that husband be completely prohibited from driving with the child, and the fact that husband currently lives at least an hour away from the child. A complete prohibition on husband’s driving would be a substantial hindrance to husband’s right to meaningful visitation on a frequent and regular basis as he would be dependent upon others for transportation, a circumstance that husband claims caused him to not see his child for a period of five months. (See Szemansco v Szemansco, 296 AD2d 686 [3d Dept 2002]; see also Matter of Grunwald v Grunwald, 108 AD3d 537 [2d Dept 2013].)
In light of Dr. Zenetos’ concern that husband is, or is likely to become, addicted to pain medication, husband is hereby ordered to attend at least three sessions of addiction psychiatric counseling from the psychiatrist of his choice regarding his ongoing use of pain medication. This court finds that it is in the child’s best *301 interest for husband to be aware of alternative treatment options, the possible side effects of his newest prescription medication, and the dangers of addiction as recommended by Dr. Zenetos and Dr. Stillwell. It is this court’s hope that husband will choose to avail himself of this counseling for longer than the three visits mandated herein. This counseling is being ordered as a component of his visitation, not a condition precedent thereto. (See Palmeri v Palmeri, 110 AD3d 859 [2d Dept 2013]; see also Matter of Torres v Ojeda, 108 AD3d 570 [2d Dept 2013]; Matter of Thompson v Yu-Thompson, 41 AD3d 487 [2d Dept 2007].)
In addition, as requested by wife, husband is hereby ordered to seek out the care of a board certified pain management/pain medication specialist of his choice. If husband’s new doctor, Dr. Leonid Reyfman, is a board certified pain management specialist, husband may continue treatment with this physician. Husband shall provide wife’s counsel with proof of compliance with each of these terms within 45 days of the date of this order.
Child Support/Motion Sequence No. 004
In her summons and complaint dated January 13, 2011, wife makes an application for child support. Throughout the pendency of this action for divorce, husband voluntarily paid wife the biweekly sum of $270 for support of the subject child. Wife alleges in a posttrial order to show cause dated June 4, 2013 that husband ceased his voluntary payments immediately following his last day of testimony. On June 13, 2013, this court ordered an interim award of child support in the biweekly amount of $270, representing a resumption of the amount previously paid. The parties thereafter agreed to merge the issues raised in wife’s order to show cause into the trial. The court will hereby take judicial notice of all motion papers and supporting documents related to motion sequence number 004 as the motion was merged into the trial. (See Matter of Allen v Strough, 301 AD2d 11 [2d Dept 2002]; see also People v Pordy, 88 AD3d 746 [2d Dept 2011].)
There is one child of the marriage G.G. (age six). By consent order dated August 9, 2011, wife was awarded sole legal and physical custody of the subject child. Wife seeks child support for the subject child. Husband is employed by the New York City Department of Citywide Administrative Services (DCAS) as a laborer, wife is a teacher employed by the New York City Board of Education.
*302 The Child Support Standards Act (CSSA) presumptively results in the correct amount of child support to be awarded to the custodial parent. Applying the statutory percentage of 17% to the combined parental income will provide the appropriate level of support to meet the basic needs of the subject child.
In determining income for purposes of calculating child support, the court is directed to utilize the parties’ income as reported in their most recently filed tax return, however there is authority to use other income information where appropriate. (See Matter of Lynn v Kroenung, 97 AD3d 822 [2d Dept 2012]; see also Eberhardt-Davis v Davis, 71 AD3d 1487 [4th Dept 2010]; Pauk v Pauk, 232 AD2d 386 [2d Dept 1996]; Matter of Culhane v Holt, 28 AD3d 251 [1st Dept 2006].) Here, husband provided his 2010, 2011 and 2012 tax returns to the court in opposition to wife’s motion. Husband’s 2010 tax return claims a total income of $54,166 based upon his salary from the City of New York of $44,649 together with a W-2 from an entity known as Silk Corp. in the amount of $10,406. Husband testified that he was employed as a “doorman” for Silk Corp. from May 2009 to July 2011. Husband’s 2011 tax return indicates a total income of $41,608. Finally husband’s 2012 tax return indicates a total income of $112,482.
To explain the sudden increase in his 2012 salary, husband has provided a letter from the New York City Office of Labor Relations which indicates that husband’s 2012 pay includes retroactive pay resulting from the decision in a “prevailing wage” lawsuit. (See Matter of City of New York v Liu, 93 AD3d 584 [1st Dept 2012].) Wife acknowledges in her moving papers that husband was receiving retroactive pay in 2012. Husband claims that his current base salary is $68,361 gross and has submitted a letter from the Human Resources Department of the Department of Citywide Administrative Services which supports this amount.
During trial, two of husband’s net worth statements were offered as evidence (plaintiff’s exhibits 5, 10). Husband’s net worth statement dated January 26, 2012 indicates a biweekly net salary of $1,112.64, which amounts to approximately $2,225.28 in months where there are two paychecks and $3,337.92 in the two months a year where husband would receive three paychecks. Husband’s 2012 estimated monthly expenses are approximately $5,665.64 a month, which amounts to a shortfall of either negative $3,440.36 in two paycheck months, or negative $2,327.72 in three paycheck months. Notably this *303 net worth statement was provided in 2012 when husband’s salary was artificially inflated due to retroactive pay. However, husband’s 2011 statement of net worth indicates a monthly net income of $2,225.28 and an estimated monthly expense of $5,200.74 for a shortfall of negative $2,975.46 a month. Husband’s 2011 statement of net worth was prepared during a time in which he was not receiving retroactive pay. The court notes that both of husband’s net worth statements include monthly expenses relating to husband’s second child who was born out of wedlock with his paramour, J.H. According to husband’s 2012 statement of net worth, Ms. H. earns approximately $80,000 a year. Husband also credibly testified that he previously worked a second job as a doorman wherein he parked cars for an estimated off the books salary of $200 a week. Husband testified that he no longer has a second job and is only employed by DCAS.
Wife attributes the large discrepancy between husband’s claimed income and his estimated monthly expenses to his alleged sale of his prescription drug medication. Wife testified as to husband’s lifestyle, and submitted cash bank deposits which she believes supports her position. Husband denies that he ever sold his medication and attributes the monthly shortfall indicated in his net worth statement to the fact that he only pays one half of the listed expenses, the other half being paid by his paramour, Ms. H. Husband attributes the cash deposits to loans taken from friends and his paramour and return payments on various loans that he distributed at prior points in his life.
In determining a parent’s child support obligation, the court need not rely upon a party’s own account of his or her finances, and may impute income where warranted. (See Reale v Reale, 104 AD3d 747 [2d Dept 2013].) Wife’s credible testimony, together with husband’s bank records, and the discrepancies present in both of husband’s sworn statements of net worth support the proposition that husband is receiving income from some source other than his DCAS salary. Accordingly, the amount of $10,400 a year shall be imputed to husband for purposes of calculating child support and counsel fees. This amount represents his established earning potential, as his 2010 tax return includes a W-2 from “Silk Corp.” in the amount of $10,406. Husband has established that he previously worked this second job as a doorman wherein he made $200 a week in cash and has not explained why he is not capable of doing so *304 now. (See Patete v Rodriguez, 109 AD3d 595 [2d Dept 2013].) Husband’s testimony that he currently receives extra income from his friends and paramour also supports imputation as financial support provided by friends and family may also be imputed as income. (See Domestic Relations Law § 240 [1-b] [b] [5] [iv] [D]; see also Baumgardner v Baumgardner, 98 AD3d 929 [2d Dept 2012].)
Accordingly, husband’s income for purposes of calculating child support shall be his base salary of $68,361 plus an imputed amount of $10,400 for a total amount of $78,761. While the court is directed to reduce husband’s gross income by his Social Security, Medicare and New York City taxes “actually paid” in 2012, husband’s salary for 2012 was temporarily inflated by his receipt of retroactive pay. However, husband has provided the court with an estimation of his 2013 deductions “actually paid” up to October 11, 2013. (See Brevilus v Brevilus, 72 AD3d 999 [2d Dept 2010].) Accordingly the amount of $78,761 shall be reduced by husband’s FICA deduction of $3,055 and his Medicare deduction of $714. Husband does not pay local tax, as he is not a resident of New York City or Yonkers. While husband’s financial documents show a deduction for “New York City Tax Waiver” this is a “condition of employment” payment required by section 1127 of the New York City Charter and is not an actual payment of city tax. Therefore husband’s adjusted income for purposes of calculating child support is $74,992.
Wife’s income will be calculated in accordance with her 2012 W-2 which indicates that she earned total income of $85,692. This amount must be reduced by wife’s FICA deduction of $3,599, her Medicare deduction of $1,242, and her local tax deduction of $2,731 for an adjusted income of $78,120.
The combined parental income for purposes of calculating child support is $153,112. However wife has not sought, nor does the record support, consideration of income above the statutory cap of $136,000. (See Matter of De Souza v Nianduillet, 112 AD3d 823 [2d Dept 2013].) In making this determination the court has considered the factors set forth in Domestic Relations Law § 240 (1-b) (f), the standard of living of the parties, the reasonable needs of the child, and the fact that husband has a child to support who is not of this union. (See Domestic Relations Law § 240 [1-b] [f] [8]; see also Lago v Adrion, 93 AD3d 697 [2d Dept 2012].) Applying the statutory percentage of 17% to the combined parental income cap of $136,000 results in a combined child support obligation of $23,120.
*305 As the noncustodial parent, husband’s pro rata share of the $23,120 child support obligation is 49% or $11,329 a year, $944 a month or $436 biweekly. This award is retroactive to the date of filing of the summons and complaint. (See DiFiore v DiFiore, 87 AD3d 971 [2d Dept 2011].) Retroactive arrears shall be paid by husband at the rate of $100 a month in addition to his first payment each month. Husband shall receive a credit for all previous child support payments made voluntarily, or under the temporary order of this court. Wife is to submit an order, on notice to husband, calculating the amount of arrears owed within 14 days of this decision and order. Husband’s first payment shall be made on January 14, 2014 and continue biweekly thereafter. As both parties are wage earners they will be able to claim the subject child for tax purposes on alternate years. Wife shall be entitled to claim the child on even years, and husband shall be entitled to claim the child on odd years.
Each party has a right to seek a modification of the child support award ordered herein upon a showing of a substantial change in the circumstances, that three years have passed since the order was entered, or that there has been a change in either party’s gross income by 15% or more since the order was entered.
Counsel Fees
Wife seeks an award of counsel fees and expert fees in relation to her application to suspend husband’s visitation. Wife argues that the divorce proceeding was unnecessarily delayed and the trial unnecessarily prolonged after her discovery of the UFT prescription drug health insurance statement which alerted her to husband’s abuse, or misuse, of prescription drugs. Wife argues that, among other events, husband’s failure to be forthcoming regarding his drug use, together with multiple failed midtrial settlement conferences resulted in extensive delay. Moreover, even after the record was closed on November 19, 2012, husband made a posttrial application, which was granted, to reopen the record to provide evidence that he voluntarily ceased his prescription drug use, only to later testify that he failed in his attempt and instead switched to a different opiate, Nucynta. Wife approximates that she has paid approximately $66,000 to Ms. Halk in counsel fees and costs. Wife testified that, in order to pay her counsel fees, she was forced to take a pension loan and borrow money from various sources. Wife seeks reimbursement for fees already paid, and payment of fees currently due and owing.
*306 An award of reasonable counsel fees is a matter within the sound discretion of the trial court. The issue of counsel fees is controlled by the equities and circumstances of each particular case. (See Nicodemus v Nicodemus, 98 AD3d 605 [2d Dept 2012] ; see also Domestic Relations Law § 237 [a].) Here, the parties earn, or are capable of earning, similar incomes, however, a party’s ability to pay is but one factor in determining a counsel fee application. (See Matter of McCullough v Falardeau, 184 AD2d 989 [3d Dept 1992]; see also McCann v Guterl, 100 AD2d 577 [2d Dept 1984].) In addition to finances, the court is also directed to consider the relative merits of the parties’ positions and if either party engaged in conduct that resulted in a delay of the proceedings or unnecessary litigation. (See Vitale v Vitale, 112 AD3d 614 [2d Dept 2013].) Here, husband’s failure to acknowledge and timely address his abuse, or misuse, of prescription drugs resulted in the necessity of a motion to suspend his visitation, the necessity of a court appointed supervisor, Ms. Eileen Montrose, and a protracted trial including medical experts that would not have otherwise been necessary. (See Patete v Rodriguez, 109 AD3d 595 [2d Dept 2013] .) Moreover, husband’s application to reopen the record, his attorney’s motion to withdraw as counsel based upon husband’s failure to pay counsel fees, and husband’s repeated failure to provide financial discovery, resulted in excessive delay. (See Brantly v Brantly, 89 AD3d 881 [2d Dept 2011].) Accordingly, husband is hereby ordered to pay combined expert and counsel fees in the amount of $20,000 representing a contribution of approximately one half (50%) of all fees and costs reasonably incurred by wife due to the protracted and prolonged litigation surrounding the nature, quantity, source and effect of husband’s involvement with prescription drugs. In making this award, the court has reviewed the voluminous detailed billing records submitted by plaintiff’s counsel and attributed to husband only court appearances and billing entries reasonably related to litigation involving husband’s prescription drug use.
This award of counsel fees is to be paid directly to wife’s counsel in two payments of $10,000. The first payment is to be made within 60 days of the date of this decision and order, the second payment is to be made within 120 days of the date of this decision and order. Wife’s counsel is hereby directed to utilize these funds first as to any balance presently due and owing to her from wife, and to reimburse wife with any amount remaining.
*307 Wife also seeks additional counsel fees in the amount of $3,750 in relation to her motion for pendente lite child support and to enforce the parties’ equitable distribution stipulation. Wife’s application is hereby granted in part. Wife is not entitled to an award of counsel fees in relation to her application for child support as there was no prior order of the court to enforce. Husband’s prior payments of child support were of a voluntary nature. However, wife’s application for counsel fees in relation to husband’s failure to comply with the parties so ordered stipulation dated June 21, 2011, which required him to sign over the deed to the parties’ Staten Island property, is hereby granted in the amount of $1,875. The court is authorized to award counsel fees when an enforcement motion is required to execute an order of the court. (See Domestic Relations Law § 238.) Here, husband’s refusal to execute the deed for over a year, which resulted in the need for the present enforcement motion, warrants an award of counsel fees. (See Franco v Franco, 97 AD3d 785 [2d Dept 2012].) This payment of $1,875 shall be made directly to wife’s counsel within 30 days of this decision and order.
With regard to fees owed by husband to his own attorney, Mark Bernstein Esq., the court has considered, and signed, the unopposed settled order requesting a judgment in the amount of $11,434. This settled order was submitted in relation to Mr. Bernstein’s application to be relieved as counsel (sequence No. 005), which was granted on default and without opposition on July 9, 2013. (See separate settled order on notice.) Husband’s reciprocal request for counsel fees from wife is hereby denied. Husband failed to make the requisite showing as the parties are capable of earning substantially the same income and it was husband’s actions, not wife’s, that delayed this proceeding. Contempt
On or about April 26, 2012, husband moved by order to show cause to hold wife in contempt for her alleged failure to produce the subject child for his scheduled weekend visitation on Friday, November 25, 2011 and the following Wednesday, November 30, 2011.
In order to prevail on a motion for contempt, the moving party must prove: (1) the existence of a clear and lawful mandate of the court; (2) that the party alleged to have disobeyed the order was aware of its terms, and (3) that the moving party’s rights were prejudiced. (See Coyle v Coyle, 63 AD3d 657 [2d Dept 2009].) In addition, the movant must dem *308 onstrate that the offending party’s failure to obey the terms of the order was willful. (See Taylor v Taylor, 83 AD3d 815 [2d Dept 2011].) Finally, the moving party must show that all less drastic remedies have been exhausted or would be ineffectual. (See Wolfe v Wolfe, 71 AD3d 878 [2d Dept 2010]; see also Jones v Jones, 65 AD3d 1016 [2d Dept 2009].) Upon a finding of contempt, the court may impose a period of incarceration. (See Matter of Powers v Powers, 86 NY2d 63 [1995].)
During trial, wife admitted that she did not give the child to husband for visitation on the dates alleged despite the fact that she was aware of the order of this court dated March 2, 2011, which granted husband visitation. Wife is in violation of the order of this court. However, before considering incarceration or sanctions, the court is directed to consider less harsh alternative remedies unless they would prove ineffectual. (See Moore v Moore, 93 AD3d 827 [2d Dept 2012].) Moreover, when assessing the penalties for contempt in relation to an order of visitation, the court must consider the child’s best interests. (See Matter of Pignataro v Davis, 8 AD3d 487 [2d Dept 2004].) Here, the appropriate remedy is a period of makeup visitation. (See Vasquez v Vasquez, 281 AD2d 301 [1st Dept 2001].) Husband is hereby awarded additional makeup visitation the Saturday, February 1, 2014 at 9:30 a.m. to Sunday, February 2, 2014 at 8:00 p.m., as a remedy for wife’s failure to provide visitation on the dates alleged.
Conclusion
For the reasons set forth above, husband is granted unsupervised visitation with the subject child, G.G., in accordance with this decision and order. Husband is directed to enroll in treatment with a psychiatrist that specializes in addiction for at least three sessions. Husband is also directed to provide proof to wife’s counsel that he is under the care of a board certified pain management/pain medication specialist. Husband’s application for contempt is resolved by an additional period of makeup visitation as set forth above. Wife’s request for counsel and expert fees is granted in the amount of $1,875 to be paid within 30 days, $10,000 to be paid within 60 days, and an additional $10,000 to be paid within 120 days for a total award of $21,875. Husband’s application for counsel fees is denied. Finally, husband is ordered to pay child support in the biweekly amount of $436 with retroactive arrears to be paid in the amount of $100 per month in addition to the first payment each month.
*309 Husband’s counsel’s application for a judgment regarding outstanding fees was resolved in a separate settled order issued this date.
All matters not addressed herein are denied.