██ PAULETTE J. SPIEGEL-PORCO, Respondent, v ELLIOTT P. PORCO, Appellant. [6 NYS3d 595]—

In an action for a divorce and ancillary relief, the defendant appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Westchester County (Christopher, J.), entered July 26, 2012, as, upon a decision of the same court dated October 31, 2011, made after a nonjury trial, directed him to pay to the plaintiff the sum of $1,879 per month for child support and the principal sum of $6,443 for child support arrears.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, and the matter is remitted to the Supreme Court, Westchester County, to recalculate, with all convenient speed, the defendant's child support obligation and child support arrears, in accordance herewith; and it is further,

Ordered that, in the interim, the defendant shall continue to pay child support in the sum of $1,879 per month.

The parties were married on August 21, 2004, and have one child. On September 1, 2009, the plaintiff commenced this action for a divorce and ancillary relief. After the commencement of the action, the defendant continued to live in the marital residence with the plaintiff and the child. During that time, pursuant to a pendente lite order entered January 14, 2010, the defendant was directed to pay all carrying charges for the residence and 66% of child care costs and unreimbursed health care costs for the child. However, on June 8, 2010, the defendant was directed to leave the marital residence, and to pay child support in the sum of $1,500 per month, in addition to the carrying charges for the residence.

Prior to the trial, a neutral forensic accountant was appointed by the court to analyze the defendant's income stream from five businesses and to determine the defendant's income for purposes of calculating the parties' respective child support obligations. In the report of his findings, the forensic accountant concluded that the defendant's annual income was $150,000, which the trial court later adjusted to $132,000 based

on the accountant's testimony that he double-counted certain income received by the defendant. The court then determined that the defendant's pro rata share of basic child support and statutory add-ons was 54%, and that the defendant's monthly child support obligation was $1,879. The court further directed the husband to pay child support arrears in the sum of $6,443, representing the difference between the child support obligation contained in the order dated June 8, 2010, and the child support obligation determined after trial. The defendant appeals from the determinations of his child support obligation and child support arrears.

The defendant correctly contends that, in calculating child support arrears, the trial court erred in failing to credit him for the amount that he paid for the carrying costs of the marital residence pursuant to the order dated June 8, 2010 (*see Lauria v Lauria*, 45 AD3d 535 [2007]; *Graham v Graham*, 277 AD2d 423, 424 [2000]; *cf. Fredericks v Fredericks*, 85 AD3d 1107, 1109 [2011]; *see also Harris v Harris*, 97 AD3d 534, 536 [2012]), as well as for the 12% of add-on expenses and forensic accountant's fees that he had overpaid pursuant to the order entered January 14, 2010, which had set his pro rata share of expenses at 66% (*see generally Yecies v Yecies*, 108 AD2d 813, 814 [1985]). Contrary to the plaintiff's contention, both of these matters were before the trial court and, thus, are properly before this Court for appellate review.

In calculating the defendant's child support obligation, the trial court further erred in failing to account for child support "actually paid" by the defendant, pursuant to a judgment of divorce, on behalf of his four children from a prior marriage (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [D]). In that respect, the court incorrectly concluded that there was no evidence in the record that the defendant had actually made such child support payments. To the contrary, the plaintiff's evidence included the defendant's Citibank statements for the period from January 20, 2009, through November 17, 2009, which demonstrated that the defendant had paid certain sums of child support to the New York State Child Support Processing Center. Upon remittal, the payments documented in those Citibank statements for the period from January 20, 2009, through November 17, 2009, must be subtracted from the defendant's income, and the parties' respective child support obligations recalculated (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [D]; *cf. Baumgardner v Baumgardner*, 98 AD3d 929, 931 [2012]).

There is no further basis, however, for disturbing the trial

court's determination of the defendant's annual income. " 'In determining a child support obligation, a court need not rely on a party's own account of his or her finances' " (*Lago v Adrion*, 93 AD3d 697, 698 [2012], quoting *Bell v Bell*, 277 AD2d 411, 412 [2000]; *see Wesche v Wesche*, 77 AD3d 921, 923 [2010]). Rather, "[w]here a party's account is not believable, the court may impute a true or potential income higher than alleged" (*Wesche v Wesche*, 77 AD3d at 923; *see Greisman v Greisman*, 98 AD3d 1079, 1080 [2012]; *Scammacca v Scammacca*, 15 AD3d 382 [2005]). Here, the court's imputation of income was supported by the forensic accountant's testimony and other evidence (*see Turco v Turco*, 117 AD3d 719, 720 [2014]; *Lago v Adrion*, 93 AD3d at 699).

The parties' remaining contentions are without merit. Skelos, J.P., Roman, Hinds-Radix and LaSalle, JJ., concur.